437 P.2d 686

Marvin YOUNG and Stella Young, his wife, Plaintiffs and Appellants,

v.

George BRIDWELL, Defendant and Respondent.

No. 10774.

Supreme Court of Utah.

Feb. 20, 1968.

Stewart, Topham & Harding, Ray M. Harding, Salt Lake City, for appellants.

Ernest F. Baldwin, Jr., Salt Lake City for respondent.

ANDERSON, District Judge.

The plaintiffs Young sue defendant George Bridwell for damages allegedly caused by his failure to properly perform his duties for them as a lawyer. Upon a trial to the court judgment was rendered against the plaintiffs and they appeal.

The plaintiffs engaged Mr. Bridwell to represent them in a case the facts of which are in summary as follows:

Marvin and Stella Young, his wife, plaintiffs herein, on April 4, 1959, purchased the property at 4430 South 9th East from Anthony and Mary Baker. The property at that time was subject to a lease to F. Hyde and Betty Lucille Mortensen, dated August 10, 1957, for a period of five years, and renewable at the option of the lessee, except that the rent was subject to arbitration for the second five year period.

On September 27, 1961, said Youngs sued the lessees, the Mortensens seeking to terminate the lease because of alleged violations of the lease agreement by said lessees. At the time of the filing of this complaint, Mr. Tom Metos and Mr. Mark Miner, attorneys, represented them. An answer was filed for defendants November 3, 1961, by Mr. Bernard Rose, attorney. A reply was filed by Mr. Metos and Mr. Miner November 8, 1961. With the case at issue nothing further happened until March, 1962, when plaintiffs' attorneys gave notice of taking the deposition of the defendants.

On August 24, 1962, a withdrawal of counsel was effected with notice given to all concerned. George Bridwell became attorney of record and apparently had already rendered services prior to the filing of the withdrawal. The file shows by affidavit of the plaintiffs that defendants Mortensen by their attorney, Bernard Rose, gave notice of intention to continue to occupy the premises under the lease by a letter to Mr. Bridwell in July of 1962, prior to the expiration of the five-year term of the lease. The terms of the letter offered the same rent of $150 a month, or, if refused, proposed that as provided in the lease the amount be arbitrated. Mr. Bridwell, according to the affidavit, responded in behalf of plaintiffs Young by a letter indicating that the lease could be renewed for an additional five-year period only if it was agreed they would pay as rent the sum of $450 a month, and if not accepta–

ble, that the letter was to be considered a notice to quit the premises by the end of the lease period, to-wit, August 10, 1962. The letter further warned that if this arrangement was not accepted the suit to terminate the lease filed September 27, 1961, that would be activated.

There is no evidence that any response was made to this last letter, or that the parties did anything further to explore arbitration to resolve the amount of the rent. Subsequently, payments of $150 per month were accepted by the plaintiffs Young without further objection up to the ultimate date of trial on January 7, 1963.

A pretrial of the matter was held on November 30, 1962, at which time the Youngs were represented by Mr. Bridwell's office associate, Mr. Alan D. Frandsen. The record does not show that his appearance was made with them present or that they had expressly or impliedly consented to or acquiesced in their being represented at that time by him. Judge Ellett's pretrial order ruled that as a matter of law the acceptance of the first rental payment after August 10, 1962, constituted a renewal of the lease for a new period of five years as allowed in the option in the lease. The court was not advised at the pretrial, so far as the record discloses, of the exchange of letters between counsel on the question of renewal and the rent to be charged, nor of an order purportedly prepared by Alan D. Frandsen, ordering that the rental payments of $150 be paid into court. There is no evidence such an order was signed, but it must be assumed from the tenor of the last-referred-to order that Mr. Frandsen knew of it and had in mind getting the order signed to avoid any legal inference that might arise of waiver of the right to negotiate the renewal of the lease and/or the rate of the rent if the payments were received and kept by the Youngs. The evidence indicates that the Youngs did continue to receive the rental payments at the old rate.

At the trial of the matter on January 7, 1963, Mr. Frandsen represented the Youngs without objection on their part so far as the record is concerned. At this time Mr. Frandsen took issue with the trial court on its ruling at the pretrial that acceptance of the rent constituted a renewal of the lease at the old terms. The court acknowledged that it could reconsider the ruling made at the pretrial hearing and asked Mr. Frandsen for law to the contrary. He cited some authority and then had a discussion with the court off the record. The court took the matter under advisement. At the conclusion of the trial the court stated that it was still of the opinion that it would be immaterial to grant Mr. Frandsen's request to amend the pretrial order. The issue of whether or not there was a breach of the lease the judge handled by saying: "I still think that by accepting the payment that he would have waived that, even had it been a breach."

**336**

On February 23, 1965, the Youngs filed suit against Mr. George Bridwell claiming breach of contract in representing them. It was claimed that his negligence and that of Mr. Frandsen's in the way the suit against the Mortensens was handled, and his failure to appeal the court's claimed erroneous ruling, or to fail to advise them of the court's error, and/or to advise them to appeal, caused them to lose the right to renegotiate the rate of rental of the lease during the extended period to their damage in the sum of $15,000. On November 4, 1966, Judge Stewart Hanson ruled in this suit that the action should be dismissed.

In the suit to terminate the lease, on October 31, 1966, Judge Stewart Hanson heard a motion to strike judgment and for new hearing, argued by Ray M. Harding for plaintiffs and Ernest F. Baldwin, Jr., for defendant. The court denied the motion and found that an appeal would have been of no avail to plaintiffs and that therefore plaintiffs were barred from seeking recovery in this action against Mr. Bridwell.

From the foregoing it clearly appears that while Mr. Frandsen may not have been as well apprised of the facts at the time of pre-trial as Mr. Bridwell, the court gave him opportunity at the trial to argue whether or not payment and receipt of rent at the old rate was conclusive of the matter. He cited authorities supporting a view opposite to the view taken by the judge, and the judge nonetheless did not change his view. This result was reached at a hearing at which the Youngs were present. The record discloses no objection on their part to representation by Mr. Frandsen.

In no way is it disclosed by appellants how Mr. Bridwell's presence might have made the difference. But in any event one employing another to perform some work requiring special skill, such as an attorney, though he is by that contract entitled to his personal services and to refuse those of an associate, must be held to have waived the right to his personal assistance where the facts show attendance with an associate, without objection, at a hearing or trial where services contemplated by their employment contract were to be rendered, as is the case here. One who appears at a dentist's office and finds his regular dentist is on vacation and has assigned the work to an associate in the office, and who then voluntarily permits the associate to proceed can hardly complain of breach of contract by the first. The same must apply to other professional services. It is well known generally that lawyers office together and cooperate and assist one another at times in working on their cases. While the services of an attorney are personal and a client would be justified in refusing the assistance of an associate, such services as are knowingly accepted certainly constitute a waiver of the right to be assisted in those respects by the one with whom the contract was first made.

■ If there was any deficiency in the preparation of Mr. Frandsen at the time of pretrial and a breach of contract for representation by Mr. Bridwell in assigning it to him for handling without consent of the Youngs, it was not actionable in and of itself because the court, as explained above, gave Mr. Frandsen opportunity to review it at the trial when his assistance was acquiesced in by the Youngs. The letters of Mr. Rose and Mr. Bridwell, written in July, 1962, and exchanged in dispute over the renewal of the lease and the rate of rental, do not appear to have been mentioned to the court at the pretrial or trial, though bearing upon the subject. Of course, they could have been mentioned when the court was off the record. Nonetheless, they are not such facts as would reasonably appear to have had any influence on the court since payments at the old rate were made after the letters as claimed and the court said that it was of the opinion that this fact of payment would be conclusive of the matter "even had it been a breach." In effect the court is saying that in its opinion even if plaintiff in the suit to terminate the lease could establish a breach, the acceptance of the payments would renew the lease at the old terms.

■ Appellants next contend that the court below erred in ruling that the results would not have been different on appeal in the original case and therefore an appeal would have been of no avail. The parties are not in disagreement that in order to make out a cause of action against the attorney for failing to advise of their right to appeal, it would have to be shown that there was at least a reasonable likelihood of reversing the judgment and that it would have benefited the plaintiff. Appellants in their brief cite authorities upon which they argue that where a lease contains an option on the part of the lessee to extend the lease for an additional period, but makes the rental subject to negotiation or arbitration, as in this case, receiving rentals at the old rate, particularly if there was any notice of the fact that lessor would not permit the old rate to continue, would not automatically extend the lease on the old terms. (45 A.L.R.2d 827)

■ Where, as here, a lease contains a clause granting the lessee the option to require of the lessor an extension of the lease period, but subject to arbitration so far as the rent is concerned, and where the lessee gives notice of intention to exercise the right of extension, this is binding on the lessor insofar as the term of the lease is concerned. Where, as here, the rate of rental is subject to arbitration, and the lessor has given notice of refusal to accept the old rate of rental and advised that failure to agree to the proposed increase would result in activation of the action pending to terminate the lease, the mere acceptance of a monthly rental at the old rate would not in and of itself necessarily constitute a waiver of his

right to negotiate a new rate of rental as the lease provides. It is unnecessary for us to be concerned however with whether the trial court's decision in the prior case might have been reversed, because even if that fact be assumed, there is another aspect of this case which supports the result reached by the trial judge in the instant case and precludes the plaintiff's recovery. This court has ruled in the Backman case (Lundberg v. Backman, 11 Utah 2d 330, 358 P.2d 987) that an attorney is under no obligation to pursue an appeal on behalf of his client unless there has been some agreement or indication from the client that the attorney was to represent him on appeal. There is no evidence in this instance that such was the case.

■ If it was established that the trial court had entered a ruling manifestly against the general law on the subject, as determined by our Supreme Court, or in contravention of express statutory or constitutional provision, and this fact was discoverable upon reasonable professional research by counsel, upon such a showing a duty conceivably might arise on the part of counsel at least to so inform his client even though there was no agreement or indication the attorney was to represent the client on appeal. However, in this case there is no such established error giving rise to the duty of counsel to advise his client of the right to appeal. Counsel is required to possess the ordinary legal knowledge and skill common to members of his profession, but he is not required to know all of the law, nor to second guess the trial judge.

■ Inasmuch as it is not made to appear in this case that by adhering to the ordinary standards of professional competence it could have been determined with any degree of assurance that the judgment of the district court in the prior case would be reversed, there was no affirmative duty upon the defendant attorney to advise his client to take an appeal, nor is it shown that there was any agreement with or indication from the client that the appeal should be taken. It therefore follows that the judgment should be, and it is hereby affirmed. Costs to defendant (respondent).

CROCKETT, C. J., CALLISTER and TUCKETT, JJ., and LEWIS JONES, District Judge, concur.

HENRIOD, J., does not participate.

ELLETT, J., being disqualified, does not participate.